IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

GREGORY LEON STINSON,              )
                                   )
    Plaintiff,                     )
                                   )
v.                                 )        Case No. 3:20-cv-317-SMD
                                   )
KILOLO KIJAKAZI,                   )
*Acting Commissioner of Social Security*,[1]   )
                                   )
    Defendant.                     )

## OPINION & ORDER

Gregory Leon Stinson (Stinson) appeals a final administrative decision of the Commissioner of Social Security under 42 U.S.C. § 405(g). *Compl.* (Doc. 1) p. 1. Stinson contends that the Commissioner's decision denying him supplemental security income is not supported by substantial evidence. *Id.* The Commissioner seeks an order affirming its decision to deny Stinson benefits. *Answer* (Doc. 13) p. 3. As explained below, the Commissioner's decision is supported by substantial evidence. Accordingly, the Court affirms the Commissioner's decision.[2]

## I.  STATUTORY FRAMEWORK & STANDARD OF REVIEW

The Social Security Act establishes who is eligible to receive Social Security benefits. *Martin v. Sullivan*, 894 F.2d 1520, 1530 (11th Cir. 1990). Under the Act, an

---

[1] Under Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi, the acting Commissioner of the Social Security Administration, for Andrew Saul, the former Commissioner.

[2] Under 28 U.S.C. § 636(c), the parties have consented to the undersigned conducting all proceedings and entering final judgment in this case. *Stinson Consent* (Doc. 9) p. 1; *Comm'r Consent* (Doc. 10) p. 1.

administrative law judge (ALJ) must evaluate an application for supplemental security

income pursuant to a five-step inquiry:

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or medically equal one of the specific
> impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1?
> (4) Is the person unable to perform his former occupation?
> (5) Is the person unable to perform any other work within the economy?

20 C.F.R. § 416.920(a).[3] An ALJ reaches step four only if a claimant is unemployed

(step 1), has a severe impairment (step 2), and does not have an impairment that meets or

medically equals an impairment listed in 20 C.F.R. Pt. 404, Subt. P, App. 1 (step 3).

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

To evaluate whether a claimant is able to perform his former occupation (step 4)

and, if not, able to perform other work within the national economy (step 5),[4] an ALJ must

first determine the claimant's residual function capacity (RFC). *Phillips v. Barnhart*,

357 F.3d 1232, 1238 (11th Cir. 2004). A claimant's RFC is defined as that which the

claimant can do despite his limitations based on the record as a whole. 20 C.F.R.

§ 416.945(a). A claimant is disabled if he can perform neither his former occupation nor

any other work within the economy. *McDaniel*, 800 F.2d at 1030.

---

[3] Throughout this opinion, the Court applies the regulations in effect at the time of the ALJ's decision. *See Ashley v. Comm'r, Soc. Sec. Admin.*, 707 F. App'x 939, 944 n.6 (11th Cir. 2017) (per curiam) (explaining that, in reviewing a final decision of the Commissioner, a federal court applies "the regulations in effect at the time of the ALJ's decision").

[4] A claimant bears the burden of proof through step four; the Commissioner bears the burden of proof at step five. *See Wolfe v. Chater*, 86 F.3d 1072, 1077 (11th Cir. 1996).

By contrast, a claimant is not disabled if he can perform his former occupation or any other work within the economy. *Id.* Should an ALJ determine that a claimant is not disabled, the claimant may request review of the ALJ's decision before the Social Security Appeals Council. 20 C.F.R. § 416.1468(a). If the Appeals Council denies a claimant's request for review, the ALJ's decision becomes a final administrative decision of the Commissioner. 20 C.F.R. § 416.1481. A claimant may then seek judicial review of the Commissioner's decision in federal court under 42 U.S.C. § 405(g).

A federal court, however, is limited in its review of a final decision by the Commissioner. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). A reviewing court will not disturb the Commissioner's factual findings if they are supported by substantial evidence. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence is more than a scintilla, but less than a preponderance; it is that which a reasonable person would accept as adequate to support a conclusion. *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam); *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) (per curiam).

## II.   FACTUAL & PROCEDURAL BACKGROUND

In January 2017, Stinson applied for supplemental security income, alleging disability due to lower-back pain, high blood pressure, anxiety, depression, hernias, and

diabetes. *Tr.* at 259, 286.[5] The Commissioner denied his application, and, in August 2017, Stinson requested an evidentiary hearing before an ALJ. *Id.* at 149, 156.

At the hearing, Stinson testified that he is unable to work due to pain caused by his back and hernia. *Id.* at 38, 51. He explained that he cannot lift more than 10 pounds, stand for more than 25 minutes, or sit for more than 30 minutes without experiencing pain. *Id.* at 53–54. He also explained that he has mental health issues that limit his ability to concentrate and be around others. *Id.* at 55. All in all, Stinson estimated that his impairments keep him from leaving his home 27 days per month. *Id.*

In August 2019, the ALJ issued a written order evaluating Stinson's case pursuant to the five-step inquiry outlined in the Social Security Act. *Id.* at 10–19. At steps 1 and 2 respectively, the ALJ found that Stinson had not engaged in substantial gainful employment since he applied for benefits and that he has several severe impairments. *Id.* at 12.[6] The ALJ then moved to step 3 and concluded that none of Stinson's impairments meet or medically equal an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 13.

Before proceeding to step 4, the ALJ determined Stinson's RFC. *Id.* at 14–15. In doing so, the ALJ considered and assigned evidentiary weight to the medical opinions of four consultative examiners. *Id.* at 17. First, the ALJ gave little evidentiary weight to a

---

[5] "*Tr.*" consists of a consecutively paginated transcript of the administrative proceedings below and spans from ECF Doc. 16-1 to ECF Doc. 16-8. For clarity and consistency with the parties' briefs, the Court cites to the consecutive pagination of the transcript instead of the ECF pagination.

[6] Specifically, the ALJ found that Stinson suffers from the following severe impairments: "degenerative disc disease of the lumbar spine, diabetes mellitus, hernias, anxiety, and depression." *Tr.* at 12.

psychological evaluation performed by Dr. Samuel Williams. *Id.* at 17, 79. Dr. Williams opined that Stinson is moderately limited in his ability to understand and remember detailed instructions, sustain concentration, and carry out detailed tasks. *Id.* at 77. The ALJ, however, found that more recent medical evidence shows an "increased severity of [Stinson's] mental impairments." *Id.* at 17. Accordingly, the ALJ assigned little evidentiary weight to Dr. Williams's evaluation. *Id.*

Second, the ALJ gave great evidentiary weight to a psychological evaluation performed by Dr. Lee Stutts. *Id.* Dr. Stutts examined Stinson and opined that he is "mildly impaired for decisions regarding simple work demands/tasks and moderately impaired for decisions regarding complex work demands/tasks." *Id.* at 515. The ALJ determined that Dr. Stutts's opinion is consistent with the record as a whole—including the more recent medical evidence showing an increased severity of Stinson's mental impairments. *Id.* at 17. The ALJ explained that the record shows that Stinson's mental impairments limit his overall ability to function, but that he is generally alert, oriented, and not distressed. *Id.* at 16–17. Accordingly, the ALJ gave great weight to Dr. Stutts's evaluation. *Id.* at 17.

Third, the ALJ gave great evidentiary weight to a physical evaluation conducted by Dr. Robert Heilpern. *Id.* Dr. Heilpern reviewed Stinson's medical records and opined that Stinson can perform medium work. *Id.* at 75. The ALJ found that, although Dr. Heilpern had not examined Stinson, Dr. Heilpern's evaluation is consistent with the medical record as a whole, including physical examinations showing that Stinson has "normal gait, strength, tone, sensation, and coordination." *Id.* at 17. Thus, the ALJ gave great evidentiary weight to Dr. Heilpern's evaluation. *Id.*

Fourth and finally, the ALJ gave little evidentiary weight to a physical evaluation conducted by Dr. Gary Harrelson. *Id.* Dr. Harrelson examined Stinson and opined that "he would have difficulty with lifting, carrying, and walking" due to a large inguinal hernia. *Id.* at 511. The ALJ found that Dr. Harrelson's evaluation is "vague" and provides "little assistance in determining" Stinson's physical limitations. *Id.* at 17. Accordingly, the ALJ concluded that the evaluation provides "little assistance in determining" Stinson's physical limitations. *Id.* The ALJ therefore gave little evidentiary weight to Dr. Harrelson's evaluation. *Id.*

Considering this opinion evidence along with the record as a whole, the ALJ determined that Stinson has an RFC "to perform medium work"—as defined under 20 C.F.R. § 416.967(c)[7]—with several exceptions and limitations. *Id.* at 14–15. As to the exceptions, the ALJ determined that Stinson can occasionally stoop, balance, kneel, crouch, crawl, "push/pull with his bilateral lower extremities," and engage in social interactions. *Id.* at 15. The ALJ further found that Stinson "can perform unskilled work, make simple workplace decisions, and adapt to [] few changes in the workplace." *Id.* As to the limitations, the ALJ determined that Stinson "can never climb ladders, ropes, or scaffolds" and "should avoid concentrated exposure to fumes, unprotected heights, dangerous moving machinery, and uneven surfaces." *Id.* The ALJ added that Stinson would likely need no more than 2 unplanned absences per month. *Id.*

---

[7] Under 20 C.F.R. § 416.967(c), medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds."

Notably, in reaching this RFC determination, the ALJ discredited Stinson's testimony about the limiting effects of his impairments. *Id.* at 15–16. The ALJ concluded that, although Stinson's medically determinable impairments could reasonably be expected to cause his alleged symptoms, his testimony concerning the limiting effects of his impairments is not entirely consistent with the record evidence as a whole. *Id.* at 16. With respect to Stinson's testimony about his physical impairments, the ALJ explained that a June 2015 MRI shows a normal alignment of Stinson's back and bone marrow signal intensity, and does not show any disc bulge or protrusion. *Id.* The ALJ also explained that a November 2018 CT scan indicates that Stinson's pelvis is normal and that several physical examinations show that he has "normal gait, strength, tone, sensation, and coordination." *Id.*

With respect to Stinson's testimony about his mental impairments, the ALJ found that Dr. Stutts's psychological evaluation and Stinson's behavior during the evidentiary hearing show that Stinson is able to follow questions and dialogue, and that he has "normal verbal output, normal speech, average rapport, and normal eye contact." *Id.* The ALJ further found that, although Stinson sometimes appears to have difficulty following instructions, he is generally alert, oriented, and not distressed. *Id.* The ALJ added that Stinson has received mental-health treatment "on and off" in the past, but has not always complied with his medication. *Id.* For these reasons, the ALJ discredited Stinson's testimony about the limiting effects of his impairments. *Id.*

After determining Stinson's RFC, the ALJ moved to step four of the inquiry and concluded that Stinson is unable to return to his former occupation as a groundskeeper. *Id.*

at 17. Accordingly, the ALJ moved to step 5 and considered whether Stinson can perform any other work within the national economy. *Id.* at 18. Answering this question in the affirmative, the ALJ found that Stinson can perform the duties of a hand packager, kitchen helper, and warehouse worker. *Id.* Thus, the ALJ concluded that Stinson is not disabled for purposes of the Social Security Act. *Id.* Stinson requested review of the ALJ's decision before the Social Security Appeals Council, but the Council denied his request. *Id.* at 2. Stinson then filed this case under 42 U.S.C. § 405(g). *Compl.* (Doc. 1) p. 1.

## III.   ANALYSIS

Stinson contends that the ALJ's decision is not supported by substantial evidence. *Compl.* (Doc. 1) p. 1. In support of his position, Stinson makes four arguments: (1) the ALJ erroneously gave more evidentiary weight to the physical evaluation of Dr. Heilpern than the physical evaluation of Dr. Harrelson; (2) the ALJ erroneously failed to recontact Dr. Harrelson to resolve any ambiguities in his physical evaluation; (3) the ALJ failed to fully develop the medical record; and (4) the ALJ improperly discredited his testimony about the limiting effects of his impairments. *Br.* (Doc. 14) pp. 4, 6, 10. The Court addresses each argument in turn.

### A.   The ALJ did not err by discounting Dr. Harrelson's physical evaluation and giving greater evidentiary weight to Dr. Heilpern's evaluation.

Stinson first argues that the ALJ erroneously gave more evidentiary weight to the physical evaluation of Dr. Heilpern, a nontreating, nonexamining physician, than the physical evaluation of Dr. Harrelson, a nontreating, examining physician. *Br.* (Doc. 14) p. 4. An ALJ must state with particularity the weight given to each medical opinion;

otherwise, the ALJ commits reversable error. *Himes v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 765 (11th Cir. 2014) (per curiam). The Social Security Act defines medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s)," including the claimant's symptoms, the claimant's physical and mental restrictions, and what the claimant can do despite his impairment(s). 20 C.F.R. § 416.927(a)(1).

Under the Act, there are three types "of medical opinion sources: (1) treating physicians; (2) nontreating, examining physicians; and (3) nontreating, nonexamining physicians." *Himes*, 585 F. App'x at 762. A treating physician is an acceptable medical source who provides (or has provided) a claimant with medical treatment and has (or has had) an ongoing treatment relationship with the claimant. 20 C.F.R. § 416.927(a)(2). A nontreating, examining physician is an acceptable medical source whose relationship with a claimant is based solely on the claimant's need to obtain a report in support of his disability claim. *Id.* A nontreating, nonexamining physician is an acceptable medical source who has not examined a claimant, but has reviewed the claimant's medical record and has an understanding of the applicable disability regulations. 20 C.F.R. § 416.927(c).

Generally, the opinions of treating physicians are given more weight than those of nontreating physicians, and the opinions of examining physicians are given more weight than those of nonexamining physicians. *Flowers v. Comm'r of Soc. Sec.*, 441 F. App'x 735, 740 (11th Cir. 2011) (per curiam). Opinions of nontreating, nonexamining physicians are "entitled to little weight when they are contrary to those of" nontreating, examining physicians and, taken alone, "do not constitute substantial evidence." *Putman v. Soc. Sec.*

*Admin., Comm'r*, 705 F. App'x 929, 932 (11th Cir. 2017) (per curiam) (quoting *Sharfarz v. Bowen*, 825 F.2d 278, 280 (11th Cir. 1987) (per curiam)).

With that said, an ALJ may discount the opinion of a nontreating, examining physician for good cause. *Russell v. Astrue*, 331 F. App'x 678, 682 (11th Cir. 2009) (per curiam). Good cause exists when: (1) the physician's opinion is conclusory or inconsistent with his own medical records; (2) the physician's opinion is not supported by the evidence; or (3) the evidence supports a finding contrary to the physician's opinion. *Phillips*, 357 F.3d at 1241. An ALJ who clearly articulates good cause for discounting the opinion of a nontreating, examining physician may rely on and give greater weight to the opinion of a nontreating, nonexamining physician so long as the opinion is consistent with the record as a whole.[8]

In this case, the ALJ articulated good cause for discounting Dr. Harrelson's physical evaluation. Under the first category of good cause, an ALJ may discount the medical opinion of a nontreating, examining physician when the opinion is vague or provides no specific information about the claimant's functional abilities.[9] In determining Stinson's RFC, the ALJ assigned little evidentiary weight to Dr. Harrelson's physical evaluation,

---

[8] *See, e.g.*, *Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir. 2013) (per curiam); *Flowers*, 441 F. App'x at 743; *Sharfarz*, 825 F.2d at 280–81.

[9] *See, e.g.*, *Sanders v. Soc. Sec. Admin., Comm'r*, 854 F. App'x 311, 314 (11th Cir. 2021) (per curiam) (finding good cause to discount a treating physician's opinion where the opinion "was vague and provided no specific information about how long [the claimant] could sit or stand in one position"); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) (explaining that "the opinion of a treating physician may be rejected when it is so brief and conclusory that it lacks persuasive weight"); *Williams v. Berryhill*, 2018 WL 3236052, at *7 (S.D. Ala. July 2, 2018) (finding good cause to discount the opinion of a treating physician where the physician "did not provide a detailed explanation for his assessment"); *cf.* 20 C.F.R. § 416.927(c)(3) ("The better an explanation a source provides for a medical opinion, the more weight [the Commissioner] will give that medical opinion.").

explaining that the evaluation is "vague" and provides "little assistance in determining" Stinson's physical limitations. *Tr.* at 17. Accordingly, the ALJ articulated good cause for discounting Dr. Harrelson's physical evaluation and giving greater evidentiary weight to Dr. Heilpern's physical evaluation.

Additionally, Dr. Heilpern's evaluation is consistent with the objective record evidence as a whole. The ALJ noted that, although Dr. Heilpern had not examined Stinson, Dr. Heilpern's physical evaluation is consistent with the record evidence, including medical evidence showing that Stinson has "normal gait, strength, tone, sensation, and coordination." *Id.* The Court has reviewed the record and likewise finds that Dr. Heilpern's physical evaluation is consistent with the objective evidence as a whole. Thus, because the ALJ clearly articulated good cause for discounting Dr. Harrelson's physical evaluation, and because Dr. Heilpern's physical evaluation is consistent with the objective record evidence, the ALJ did not err by discounting Dr. Harrelson's evaluation and giving greater evidentiary weight to Dr. Heilpern's evaluation.

## B.    The ALJ did not err by failing to recontact Dr. Harrelson.

Stinson next argues that the ALJ erroneously failed to recontact Dr. Harrelson to resolve any ambiguities in his physical evaluation. *Br.* (Doc. 14) p. 4. Under 20 C.F.R. § 416.919a, an ALJ may require a claimant to undergo a consultive examination if the record evidence is otherwise inadequate to determine whether the claimant is disabled. If a consultive examiner's report is "inadequate or incomplete," an ALJ must recontact the examiner and ask him to "furnish the missing information or prepare a revised report." 20 C.F.R. § 416.919p(b).

An incomplete report is one that lacks: (1) the claimant's major complaints; (2) a detailed description of the history of the claimant's major complaints; (3) a description of pertinent positive and negative detailed findings based on the history, examination and laboratory tests related to the claimant's major complaints, and any other abnormalities or lack thereof reported or found during examination or laboratory testing; (4) the results of lab tests or X-rays performed; (5) a diagnosis and prognosis for the claimant's impairments; or (5) an "explanation or comment on" the claimant's major complaints. 20 C.F.R. § 416.919n(c)(1)–(5), (7).

Here, the crux of Stinson's argument is that Dr. Harrelson's consultive examination report—i.e., his physical evaluation—is incomplete because it lacks a detailed description of Stinson's physical limitations. *Br.* at 3–4. Contrary to Stinson's position, however, the report of a consultive examiner is not incomplete simply because it fails to provide a detailed explanation of the claimant's functional limitations. *See Davison v. Astrue*, 370 F. App'x 995, 998 (11th Cir. 2010) (per curiam) (holding that a consultive examiner's report is not incomplete merely because it fails to explain the claimant's "prohibition against 'heavy lifting'"). The fact that Dr. Harrelson's report fails to specify Stinson's physical limitations alone does not make the report incomplete. Because Dr. Harrelson's report is not incomplete, the ALJ did not err by failing to recontact Dr. Harrelson.

**C.     The ALJ did not fail to fully develop the medical record.**

Stinson next argues that the ALJ failed to fully develop the medical record. *Br.* (Doc. 14) p. 6. An ALJ has a duty to fully develop the administrative record and therefore must order a consultive examination when one is necessary to determine whether a

claimant is disabled. *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (per curiam);

*Holladay v. Bowen*, 848 F.2d 1206, 1209 (11th Cir. 1988). Here, Stinson argues that the

ALJ erroneously failed to order an additional consultive examination of his mental

impairments. *Br.* (Doc. 14) p. 6. He reasons that Dr. Stutts and Dr. Williams—in

conducting their respective psychological evaluations—did not have access to the more

recent medical records showing an increased severity of his mental impairments. *Id.*

Because Dr. Stutts and Dr. Williams did not have access to these later records, Stinson

concludes, the ALJ failed to fully develop the medical record by not ordering an additional

consultive examination. *Id.* at 9.

Stinson's argument fails for two reasons. First, the medical record was sufficient for

the ALJ to determine Stinson's RFC without an additional consultive examination. Under

Eleventh Circuit precedent, an ALJ need not order a consultive examination when the

medical record is otherwise sufficient for the ALJ to determine whether the claimant is

disabled. *E.g., Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999) (per curiam); *Fries*

*v. Comm'r of Soc. Sec. Admin.*, 196 F. App'x 827, 830 (11th Cir. 2006) (per curiam).

Although Dr. Stutts and Dr. Williams did not have the benefit of reviewing Stinson's

more recent medical records, the ALJ had these records and considered them in

determining Stinson's RFC. *Tr.* at 17. For example, the ALJ gave little evidentiary weight

Dr. Williams's evaluation because the more recent records show an "increased severity of

[Stinson's] mental impairments." *Id.* Having reviewed the entire record, the Court

concludes that the medical evidence available to the ALJ was sufficient for him to make

an informed determination of Stinson's RFC. Thus, the ALJ did not err by failing to order an additional consultive examination.

Second, even if the opposite were true, Stinson has not shown that he was prejudiced by the ALJ's failure to order an additional consultive examination. If an ALJ erroneously fails to order a consultive examination, remand for further development of the record is appropriate only when "the record reveals evidentiary gaps which result in unfairness or 'clear prejudice'" to the claimant. *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (per curiam) (quoting *Smith v. Schweiker*, 677 F.2d 826, 830 (11th Cir. 1982)). A claimant bears the burden to prove prejudice. *Land v. Comm'r of Soc. Sec.*, 843 F. App'x 153, 154–55 (11th Cir. 2021) (per curiam). At a minimum, prejudice "requires a showing that the ALJ did not have all of the relevant evidence before him in the record" or "did not consider all of the evidence in the record in reaching his decision." *Kelley v. Heckler*, 761 F.2d 1538, 1540 (11th Cir. 1985) (per curiam).

As explained above, the ALJ had Stinson's more recent medical records and considered them in determining his RFC. *Tr.* at 17. This is evidenced by the fact that the ALJ gave little evidentiary weight to Dr. Williams's evaluation due to the more recent medical records showing an "increased severity of [Stinson's] mental impairments." *Id.* Stinson, for his part, has failed to prove otherwise. Thus, the ALJ did not fail to fully develop the medical record.

**D.      The ALJ did not improperly discredit Stinson's testimony about the
limiting effects of his impairments.**

Stinson's final argument is that the ALJ improperly discredited his testimony about

the limiting effects of his impairments. *Br.* (Doc. 14) p. 10. A claimant may "establish a

disability through his own testimony of pain or other subjective symptoms." *Dyer v.*

*Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (per curiam). To do so, a claimant must

produce: "(1) evidence of an underlying medical condition and either (2) objective medical

evidence that confirms the severity of the alleged pain arising from that condition or (3) that

the objectively determined medical condition is of such a severity that it can be reasonably

expected to give rise to the alleged pain. *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.

1991) (per curiam).

If a claimant satisfies this test, the ALJ must then determine the extent to which the

claimant's symptoms limit his capacity for work. 20 C.F.R. § 416.929(c)(1). An "ALJ must

clearly articulate adequate reasons for discrediting" a claimant's pain testimony. *Cooper v.*

*Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (per curiam). A reviewing

court "will not disturb a clearly articulated credibility finding supported by substantial

evidence[.]" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014).

In this case, the ALJ determined that Stinson's medically determinable impairments

could reasonably be expected to cause his alleged symptoms, but that his testimony

"concerning the intensity, persistence and limiting effects" of his impairments is not

entirely consistent with the medical record as a whole. *Tr.* at 16. With respect to Stinson's

physical impairments, the ALJ explained that a June 2015 MRI shows normal alignment

of Stinson's back and bone marrow signal intensity, and does not show any disc bulge or protrusion. *Id.* The ALJ also explained that a November 2018 CT scan indicates that Stinson's pelvis is normal. *Id.* Lastly, the ALJ relied on several physical examinations showing that Stinson has "normal gait, strength, tone, sensation, and coordination." *Id.*

Stinson's final argument is not that the ALJ failed to clearly articulate reasons for discrediting his testimony about the limiting effects of his impairments, but that "the ALJ, as a layperson[,] was not qualified to interpret the results of these imaging studies" in determining the credibility of his testimony. *Br.* (Doc. 14) p. 13.

Contrary to Stinson's position, credibility determinations are the province of the ALJ. *Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 656 (11th Cir. 2020) (per curiam). In determining the extent to which a claimant's symptoms limit his capacity for work, an ALJ must consider "the intensity, persistence, and functionally limiting effects" of the claimant's pain *in addition to* the medical evidence as a whole. *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (per curiam). An ALJ may discredit a claimant's testimony of pain or other subjective symptoms when the testimony does "not square with the objective medical evidence" in the record. *Taylor v. Acting Comm'r of Soc. Sec. Admin.*, 761 F. App'x 966, 968 (11th Cir. 2019) (per curiam).

Against this backdrop, Stinson's final argument fails. The ALJ properly considered Stinson's testimony about the limiting effects of his impairments in conjunction with the medical evidence as a whole. The ALJ pointed to particular pieces of medical evidence in the record and clearly articulated how that evidence undermines the credibility of Stinson's testimony. *Tr.* at 15–16. Having reviewed the entire medical record, the Court finds that

the ALJ's clearly-articulated reasons for discrediting Stinson's testimony are supported by substantial evidence. Thus, the ALJ did not improperly discredit Stinson's testimony about the limiting effects of his impairments.

## IV.   CONCLUSION

The Commissioner's decision below is supported by substantial evidence. First, the ALJ did not err by discounting Dr. Harrelson's physical evaluation and giving greater evidentiary weight to Dr. Heilpern's physical evaluation. Second, the ALJ did not err by failing to recontact Dr. Harrelson to resolve any ambiguities in his physical evaluation. Third, the ALJ did not fail to fully develop the medical record. Fourth and finally, the ALJ did not improperly discredit Stinson's testimony about the limiting effects of his impairments. For these reasons, the Court AFFIRMS the Commissioner's decision. The Court will enter a final judgment via separate order.

Done this 1st day of October, 2021.

Stephen M. Doyle
CHIEF U.S. MAGISTRATE JUDGE

17